The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Taylor. The appealing party has shown good grounds to reconsider the evidence. Accordingly, the Full Commission reverses the Deputy Commissioners Opinion and Award and enters the following Opinion and Award.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing and in a Pre-Trial Agreement, dated February 8, 1999 as
 STIPULATIONS
1. All parties are properly before the Commission, and the Commission has jurisdiction of the parties and of the subject matter.
2. The Travelers Insurance Company is the insurer on the risk.
3. All parties have been correctly designated, and there is no question as to misjoinder or non joinder of parties.
4. The employee, employer and insurer are subject to the North Carolina Workers Compensation Act.
5. Plaintiff, William F. Allen, was employed by D. W. Evans Electric Company, Inc. on February 19, 1998.
6. The alleged date of injury is February 19, 1998.
7. The parties stipulated into evidence as Stipulated Exhibit 1, without need for further authentication or verification, medical records consisting of nine pages from Durham Regional Hospital emergency room, sixteen pages from Dr. Theodore Pitts and two pages from Pro Active Therapy, Inc.
8. The deposition of Theodore M. Pitts, M. D. is a part of the evidentiary record.
 ***********
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner in this matter, plaintiff was a 38-year-old male, born November 30, 1960.
2. On February 19, 1998, plaintiff was employed with defendant-employer as an electrician and had been so employed for two or three months. Plaintiff had previously been employed as an electrician for thirteen or fourteen years.
3. On February 19, 1998, plaintiff was working at the Holiday Inn in Chapel Hill. He and his co-workers were pulling wire through conduits. This involved pulling several wires from a pipe in the ground, looping the wire around and working the loop out to rethread it in a perpendicular pipe. While plaintiff was performing this duty with coworker Jeff Johnson he felt a pain and pop in his right wrist. He took a few minutes off and then continued to work the rest of the day finishing his shift. Although plaintiff had pulled wires through conduits as part of his normal duties prior to this day, the weather on this particular day was cold and therefore the wire was stiffer than usual. In fact as indicated by plaintiffs coworker Jeff Johnson normally when the weather is cold and the wire is stiffer, the wire is placed in the sun to warm. However, on this day even though the wire was cold, there was no time to let it warm because they had to go ahead and cover up a ditch. Due to the cold weather, the unusual condition of the wire and the lack of time during which to warm it, plaintiff sustained an interruption of his normal work routine when the unusually cold and stiff wire caused him to injure his wrist.
4. Plaintiff presented to the emergency room at Durham Regional Hospital that evening where he was diagnosed with a fractured right navicular. Plaintiff was ultimately treated on referral by Dr. Theodore M. Pitts, an orthopedic surgeon, who diagnosed plaintiff with a non-displaced right scaphoid fracture of the right arm on February 23, 1998.
5. Plaintiff was provided light-duty work, which accommodated plaintiffs restrictions until May 14, 1998 at which time defendant-employer no longer had work available for him. At this time plaintiff applied for and received unemployment benefits for 13 weeks in the amount of $2,977.00. Plaintiff was not able to locate employment after his termination.
6. Plaintiff continued to have significant pain on June 5, 1998 and continued to request Percocet. At that time, Dr. Pitts was of the opinion that the duration of plaintiffs hand pain was unusual and that taking so much Percocet as a result could lead to addiction. At that point, Dr. Pitts referred plaintiff to a hand specialist, Dr. Richard Moore, at Duke University.
7. Plaintiff saw Dr. James A. Nunnely, an orthopedic surgeon, at Duke University on July 6, 1998. Dr. Nunnely found that the scapholunate interval was normal, that plaintiffs fracture had healed and recommended a hand therapy program. Specifically, he found that plaintiff had no torn ligaments, which might explain the duration of his pain. Nevertheless, plaintiff continued to have tenderness, swelling and loss of strength in August 1998.
8. On September 2, 1998 and again on September 28, 1998, Dr. Pitts indicated that plaintiff was capable of working with no use of his right hand. At this time Dr. Pitts continued to be perplexed and somewhat doubtful of the duration of plaintiffs pain but placed restrictions on plaintiff nevertheless since he was unable to actually gage plaintiffs pain. Plaintiff has not been seen by Dr. Pitts since October 19, 1998, at which time plaintiff was capable of work with out the use of his right hand. Plaintiff is in need of an evaluation concerning current work restrictions, necessary therapy and medical treatment. Furthermore, it appears plaintiff is in need of vocational rehabilitation.
9. Plaintiff earned approximately $13.00 per hour at the time of his injury. Plaintiff worked some overtime but there is no evidence of record of how much. The parties did not submit a Form 22 wage chart.
10. Plaintiff sustained an injury by accident arising out of and in the course and scope of his employment with defendant-employer when he experienced the immediate onset of pain to his right wrist when there was an interruption of his normal routine and the introduction thereby of unusual conditions likely to result in unexpected consequences on February 19, 1998.
11. Plaintiff has been unable to earn the same or greater wages in any employment since May 14, 1998.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows
 CONCLUSIONS OF LAW
1. On February 19, 1998, plaintiff sustained an injury by accident arising out of and in the course and scope of his employment. N.C.G.S. 97-2(6); Garmon v. Tridaire Industries, 14 N.C. App. 374
(1972).
2. As a result of plaintiffs injury by accident on February 19, 1998, he has unable to earn the same or greater wages in any employment since May 14, 1998. Therefore, subject to an attorneys fee, plaintiff is entitled to weekly benefits at a rate agreed upon by the parties beginning May 14, 1998 and continuing until he returns to work at the same or greater wages or until further order of the Commission. N.C.G.S. 97-29.
3. As no Form 22 wage chart was submitted and plaintiffs average weekly wage is somewhat unclear, the parties shall agree to plaintiffs average weekly wage and weekly compensation rate. If the parties are unable to agree, either party may request a hearing. N.C.G.S. 97-2(5).
4. Subject to the limitations of N.C.G.S. 97-25.1, plaintiff is entitled to have defendants pay for all reasonably necessary medical and vocational expenses as a result of his injury by accident as long as such expenses are for treatment, which tends to effect a cure, provide relief or lessen the period of disability. N.C.G.S. 97-25.
 ***********
Based on the foregoing stipulations, findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to an attorneys fee hereinafter approved, defendants shall pay plaintiff weekly benefits at a rate agreed upon by the parties beginning May 14, 1998 and continuing until plaintiff returns to work at the same or greater wages or until further order of the Commission. All accrued amounts shall be paid in one lump sum subject the attorneys fee hereinafter approved. If the parties are unable to agree upon the average weekly wage and resulting compensation rate, either party may request a hearing.
2. Defendants shall pay all reasonably necessary medical and vocational expenses, which tend to effect a cure, provide relief or lessen the period of disability subject to the limitations of N.C.G.S. 97-25.1.
3. An attorneys fee in the amount of 25% of the compensation awarded plaintiff is hereby approved and shall be deducted from the accrued lump sum and paid directly to plaintiffs counsel. Thereafter, every fourth check shall be paid directly to plaintiffs counsel.
4. Defendants shall bear the costs due the Commission. Further, defendants are ordered to pay, if not already paid, an expert witness fee of $275.00 to Theodore M. Pitts, M. D.
This the ___ day of June 2000.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/_______________ CHRISTOPHER SCOTT COMMISSIONER
S/_____________ THOMAS J. BOLCH COMMISSIONER